**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Revitalyte LLC,                                                Civil No. 25-534 (DWF/DTS)

Plaintiff/Counter Defendant,

v.                                                                          **MEMORANDUM**
                                                                         **OPINION AND ORDER**

PBM Nutritionals, LLC,

Defendant/Counter Claimant.

## INTRODUCTION

This matter is before the Court on Defendant/Counter Claimant PBM Nutritionals, LLC's ("PBM") motion for judgment on the pleadings.  (Doc. No. 65.)  Plaintiff/Counter Defendant Revitalyte LLC ("Revitalyte") opposes the motion.  (Doc. No. 71.)  For the reasons set forth below, the Court grants the motion.

## BACKGROUND

Revitalyte sells oral electrolyte solution ("OES") products.  (Doc. No. 9 ("Am. Compl.") ¶ 1.)  In September 2020, Revitalyte contracted with PBM, a large supplier of OES products, for approximately $4 million worth of products.  (*Id.* ¶¶ 4, 13, 22.)  Specifically, PBM agreed to supply four of its one-liter OES flavors, including shrink-wrapped caps, one-liter plastic bottles, wraparound labels, colored liquid, and flavor systems.  (*Id.* ¶ 23.)  Except for the brand graphics, the bottles supplied to each of PBM's customers are identical.  (*Id.* ¶ 24.)

The terms of Revitalyte's purchase were set forth in the Supply Agreement. (*Id.* ¶ 22; Doc. No. 13, Ex. A ("Supply Agreement").) The Indemnification section[1] of the Supply Agreement states that:

> PBM will indemnify, defend, and hold [Revitalyte and Revitalyte's] affiliates and its and their respective officers, directors, employees, and agents harmless from and against any third party claims, suits or actions and any related loss, liability, judgment, cost, and expense (including, without limitation, reasonable attorneys' fees and legal expenses) arising out of, resulting from or based on (i) a breach by PBM of the Product Warranties, (ii) the negligence or willful misconduct of PBM in connection with this Agreement or Products supplied by PBM under the Agreement, or (iii) any allegation that any Product supplied by PBM to [Revitalyte] infringes any United States patent or other third party intellectual property rights in the United States, provided, however, the foregoing does not apply to, and PBM will not have any responsibility for, any allegation of infringement due to any brand name, trade dress, trademark, trade name or logo of or provided by [Revitalyte]. This indemnification obligation of PBM shall not, however, apply to the extent that any claim, suit, action, loss, liability, judgment, cost or expense involves the breach of this Agreement, negligence or willful misconduct of [Revitalyte] or any of its affiliates.

(*Id.* § 13(a).)

In May 2023, Abbott Laboratories ("Abbott") sued Revitalyte (the "*Abbott Action*"). *Abbott Lab'ys v. Revitalyte LLC*, Civ. No. 23-1449 (D. Minn.). Abbott sells OES products under the Pedialyte® trademark. (Civ. No. 23-1449, Doc. No. 22 ¶ 2.) Abbott sued Revitalyte claiming trade dress infringement, trademark infringement, unfair competition and false advertising, trademark and trade dress dilution, and deceptive trade practices. (*Id.* ¶¶ 170-203.) Each claim includes an allegation that Revitalyte acted

---

[1]     Each section of the Supply Agreement is labeled with a heading. The headings are for convenience only and do not hold legal significance. (Supply Agreement § 20(f).) The Court uses this heading only for clarity.

willfully. (*Id.* ¶¶ 176, 180, 186, 192, 201.) That case is ongoing. In June 2024, Revitalyte provided a written notice to PBM of the *Abbott* Action. (Doc. No. 40, Ex. C.) Within the week, PBM responded, declining Revitalyte's request for indemnification and defense. (*Id.*, Ex. D.)

In February 2025, Revitalyte sued PBM, claiming breach of the contractual duty to defend (Count 1), breach of the contractual duty to indemnify and hold harmless (Count 2), breach of contractual warranty (Count 3), and Minnesota common law claims of indemnification and contribution (Count 4). (Doc. No. 1; Am. Compl. ¶¶ 49-75.) PBM now moves for judgment on the pleadings as to Counts 1 and 2, arguing that the Supply Agreement's willful-misconduct exception bars Revitalyte's claims. (Doc. No. 65.) PBM asks that Counts 1 and 2 be dismissed with prejudice. (*Id.*)

## DISCUSSION

### I. Legal Standard

A party may move for judgment on the pleadings at any point after the close of the pleadings, so long as it moves early enough to avoid a delay of trial. Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law . . . ." *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). The Court evaluates a motion for judgment on the pleadings under the same standard as a motion brought under Federal Rule of Civil Procedure 12(b)(6). *Id.*

3

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may also consider certain matters outside of the pleadings, including matters of public record or materials embraced by the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Analysis

Counts 1 and 2 both rely on the Indemnification section of the Supply Agreement. The validity of the Supply Agreement is not disputed.  The merits of Counts 1 and 2 are therefore questions of contract interpretation.[2]

The Supply Agreement is governed by Michigan law.  (Supply Agreement § 20(a).)  Under Michigan law, a contract for indemnification is construed to effectuate the parties' intent at the time they entered the contract.  *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 102 (Mich. 2014).  When, as here, parties have expressly contracted for indemnification, the language of the contract guides the intent inquiry.  *Id.* If the language is clear and unambiguous, it is construed according to the plain meaning. *Zahn v. Kroger Co. of Mich.*, 764 N.W.2d 207, 211 (Mich. 2009) ("All contracts, including indemnity contracts[,] should be construed to ascertain and give effect to the intentions of the parties and should be interpreted to give a reasonable meaning to all of its provisions.").  Additionally, a contract should be read to "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003).  If the language is unclear or ambiguous, the intent of the parties is a question of fact.  *Sherman v. DeMaria Bldg. Co.*, 513 N.W.2d 187, 190 (Mich. 1994).

---

[2]     The Court may consider the Supply Agreement because it is embraced by the pleadings.  *See Porous Media Corp.*, 186 F.3d at 1079.

The Indemnification section of the Supply Agreement requires PBM to "indemnify, defend, and hold [Revitalyte] . . . harmless from and against any third party claims, suits or actions . . . arising out of, resulting from, or based on" PBM's products and conduct. (Supply Agreement § 13(a).) However, the "indemnification obligation of PBM" does not "apply to the extent that any claim, suit, action, loss, liability, judgment, cost or expense involves . . . negligence or willful misconduct" by Revitalyte. (*Id.*) PBM argues that judgment on the pleadings is warranted because the willful-misconduct exception precludes any claim by Revitalyte. Revitalyte counters that judgment on the pleadings is premature because no finding of willfulness has been made at this point in the litigation. Revitalyte further argues that even upon a finding of willfulness, the exception would apply only to the duty to indemnify, not the duty to defend, because the exception specifies "indemnification obligation." Therefore, there are two questions of interpretation for the Court to answer: (1) whether a mere allegation of willfulness is enough to invoke the willful-misconduct exception, and (2) whether the willful-misconduct exception applies to the duty to defend.

### A.        Application of the Willful-Misconduct Exception to the *Abbott* Action

To the first issue, the Court answers in the affirmative: An allegation is sufficient to invoke the willful-misconduct exception. The Supply Agreement used broad language: "any claim, suit, action, loss, liability, judgment, cost or expense involv[ing]" willful misconduct is exempted from the indemnity obligation. (Supply Agreement § 13(a).) An allegation is synonymous with a claim. *Compare Allegation*, Black's Law Dictionary (12th ed. 2024) (defining allegation as "a statement, not yet proved, that someone has

done something wrong or illegal"), *with Claim*, Black's Law Dictionary (12th ed. 2024) (defining claim as a "statement that something yet to be proved is true").  Additionally, the word "any" and the list of multiple potential applications communicates an intention that the exception apply to a broad range of situations.  *Miller-Davis*, 848 N.W.2d at 102-03 (emphasizing that "all" and "any" are inclusive terms, especially when paired with a list of situations).  An allegation of willfulness fits within that group of potential applications.

Further, a claim or suit "involves" willfulness if willfulness is alleged. Involvement is a broad term—a lawsuit can involve willfulness if willfulness is an element of a claim even if the claim ultimately fails.  *See People v. LaFountain*, 844 N.W.2d 5, 6 (Mich. 2014) ("The term 'involve' means to include within itself or its scope." (citation modified)).  At the hearing, counsel for PBM offered the following example:  if someone on trial for murder is ultimately acquitted, it can still be said that the trial involved murder.  The Court agrees.  The word "involves" does not require an affirmative finding.  *Cf. Miller-Davis*, 848 N.W.2d at 102-04 (holding that an indemnity clause which applied to "all claims, damages, losses, demands, liens, payments, suits, actions, recoveries, judgments and expenses" did not require the indemnitee to prove liability).  The language clearly and unambiguously creates an exception to the indemnification obligation for any legal process, including allegations, that touch willfulness.

Revitalyte argues that such a result renders PBM's indemnification obligation nugatory because all cases of trademark and trade dress infringement touch willfulness,

and therefore PBM would never have to indemnify against infringement claims. This may well be true for any trade dress and trademark claims because the inquiry into likelihood of confusion includes an inquiry into intent. *See, e.g.*, *Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 509-10 (8th Cir. 2004) (discussing factors for likelihood of confusion for infringement claims, including intent to confuse). However, PBM points to the example of patent infringement, which does not involve intent. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011) (discussing the irrelevance of intent to the patent infringement inquiry). Because the language is not rendered completely superfluous, the Court cannot rewrite a clear and unambiguous contract. *Cf. Klapp*, 663 N.W.2d at 453 (finding the language ambiguous because there was "no way to read the provisions of [the] contract in reasonable harmony" without rendering at least part meaningless).

Applying the interpretation to this case, Abbott's allegations of willfulness in the *Abbott* Action are sufficient to invoke the willful-misconduct exception. The claims require the Court to assess the willfulness of Revitalyte's actions. By the plain meaning, the claims therefore involve willfulness. PBM has no responsibility to indemnify Revitalyte in the *Abbott* Action. Count 2 is dismissed.

## B.    Relationship Between Duty to Defend and Duty to Indemnify

Having found that the willful-misconduct exception applies to the situation and PBM has no duty to indemnify, the question becomes whether that exception also absolves PBM of the duty to defend.

8

The first sentence of the Indemnification section explains the circumstances under which "PBM will indemnify, defend, and hold [Revitalyte] . . . harmless." (Supply Agreement § 13(a).)  The next sentence then makes an exception that "[t]his indemnification obligation of PBM shall not" apply when any suit involves willful misconduct.  (*Id.*)  A plain reading suggests that the exception applies to the entirety of the preceding sentence.  Instead of saying "*the* indemnification obligation," the contract says "*this* indemnification obligation."  Use of the word "this" indicates that the exception applies to the thing just mentioned.  *See, e.g.*, *W.C. Ducomb Co. v. Ann Arbor Mach. Co.*, No. 301988, 2012 WL 516089, at *6 (Mich. Ct. App. Feb. 16, 2012) (per curiam) (finding that when a condition immediately follows an obligation, it is presumed that the condition applies to the obligation immediately prior).  If one were to parse out the duties as Revitalyte suggests, the first specific obligation mentioned was the duty to indemnify.  It would not make sense to use the word "this" if in reference to indemnity if the duties were separate because indemnity would not be the most recent thing mentioned.  The use of "this" therefore indicates that the duties to indemnify, defend, and hold harmless are intertwined as one.

Further, it is commonplace to refer to the combination of the duties to indemnify, defend, and hold harmless under the umbrella term of "indemnification."  *See Zahn*, 764 N.W.2d at 209-10 (calling a provision which required the subcontractor to "defend, indemnify, and hold [the contractor] harmless" an "indemnification clause"); *DaimlerChrysler Corp. v. Wesco Distrib., Inc.*, 760 N.W.2d 828, 833 (Mich. Ct. App. 2008) (calling a provision for the seller to "protect, defend, hold harmless, and

9

indemnify" an "indemnification provision"). Revitalyte somewhat acknowledges that by combining the duties to indemnify and hold harmless in Count 2. But leaving the duty to defend out of that group belies the contractual language. The duty to defend is placed between its counterparts in the Supply Agreement. It does not make sense to group the duty to indemnify and the duty to hold harmless, while separating out the duty to defend. The duty to indemnify, defend, and hold harmless was clearly intended to be one obligation here. The willful-misconduct exception applies to the entirety of PBM's indemnification obligation, including the duty to defend. Count 1 is also dismissed.

## CONCLUSION

The willful-misconduct exception in the Indemnification section of the Supply Agreement absolves PBM of responsibility to indemnify when third-party litigation involves willful misconduct by Revitalyte. The *Abbott* Action involves willful misconduct and, thus, the exception applies. Further, the exception applies to the entirety of PBM's responsibility. PBM is not required to indemnify, defend, or hold Revitalyte harmless in the *Abbott* Action.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1.      Defendant/Counter Claimant PBM Nutritionals, LLC's motion for judgment on the pleadings (Doc. No. [65]) is **GRANTED**.

2.      Counts 1 and 2 of Plaintiff/Counter Defendant Revitalyte LLC's amended complaint (Doc. No. [9]) are **DISMISSED WITH PREJUDICE**.


Dated:  May 4, 2026                         s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge